UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VESTIE LEE BRADLEY, JR.,

       Plaintiff,                             Civil Action No. 11-cv-12359

      v.                                      District Judge George Caram Steeh
                                        Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [9, 12]

Plaintiff Vestie Lee Bradley, Jr. brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Both parties filed summary judgment motions (Dkts. 9, 12), which are presently before this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (Dkt. 2).

## I. RECOMMENDATION

For the reasons set forth below, this Court finds that the Administrative Law Judge did not commit reversible error by excluding further concentration, persistence, or pace limitations from the hypotheticals he provided to the vocational expert or from his residual functional capacity assessment of Plaintiff. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

## II. REPORT

### A. Procedural History

On July 8, 2008, Plaintiff filed an application for SSI asserting that he became unable to work on April 7, 2007. (Tr. 15.) The Commissioner initially denied Plaintiff's disability application on September 18, 2008. (Tr. 15.) Plaintiff then filed a request for a hearing, and on February 25, 2010, he appeared with counsel before Administrative Law Judge ("ALJ") Elliot Bunce, who considered the case *de novo*. (Tr. 15-23, 36-52.) In a March 26, 2010 decision, ALJ Bunce found that Plaintiff was not disabled. (Tr. 15-23.) The ALJ's decision became the final decision of the Commissioner on March 23, 2011 when the Appeals Council denied Plaintiff's request for review. (Tr. 1.) Plaintiff filed this suit on May 27, 2011. (Dkt. 1.)

### B. Background[1]

Plaintiff was 41 years old when he filed for SSI. (*See* Tr. 39.) He has a high-school education and attended a year of college. (Tr. 40.) Prior to the alleged disability onset date, Plaintiff worked in a factory for about 15 years. (Tr. 111.)

#### 1. Plaintiff's Testimony at the Hearing Before the ALJ

Plaintiff testified that in April 2007 he fell and broke his left collar bone. (Tr. 42.) A few months later, Plaintiff suffered a gunshot wound to his right knee and left hand, which "shattered [a] bone" in the knee. (Tr. 42.) Plaintiff testified that he still experiences pain in his shoulder, left hand, and right knee. (Tr. 43-44.) He further attested that he has difficultly sleeping at night

---

[1] Plaintiff's sole claim of error on appeal is that, in assessing Plaintiff's residual functional capacity (i.e., the most Plaintiff can do despite his impairments), and in providing hypotheticals to the vocational expert, the ALJ did not adequately account for Plaintiff's difficulties in maintaining concentration, persistence, or pace. (Pl.'s Mot. Summ. J. at 6-13.) The Court constrains its summary of the record evidence and hearing testimony accordingly.

because of pain, which in turn causes him to nap and feel "[d]rained" during the day. (Tr. 46.)

The ALJ asked Plaintiff if "there was ever a time in your life . . . when either street drugs or alcohol were a problem?" (Tr. 45.) Plaintiff answered: "No, sir. Probably just drank a little bit." (Tr. 45.) Plaintiff testified that he had his driver's license suspended for driving under the influence. (Tr. 41.)

Plaintiff did not testify to any mental-health treatment nor did he attest to any difficulties concentrating. In fact, in a self-completed function report, Plaintiff indicated that he did not have difficulties completing tasks, following instructions, or concentrating. (Tr. 127.) He also provided that he handled stress and changes in routine "very" well. (Tr. 128.)

2. *Medical Evidence*

On March 21, 2007, Plaintiff went to the emergency room for injuries to his left shoulder area sustained in a fall. (Tr. 195.) Treatment notes provide, "Social History: Denies drug abuse. Tobacco: 10-15 pack years[.] Alcohol: Socially." (Tr. 196.) Plaintiff's psychiatric status was oriented to person, place, and time and he had a "normal" affect. (*Id.*) On March 23, 2007, Plaintiff saw Dr. Brian C. de Beaubien for a follow up on his left clavicle fracture. (Tr. 203-05.) Regarding Plaintiff's social history, Dr. de Beaubien noted, "Patient is a moderate or 'social' drinker" and "has been addicted to or dependent on marijuana." (Tr. 204.) Plaintiff's mental status, judgment, and insight were normal. (*Id.*)

In July 2007, Plaintiff was treated in the emergency room for gunshot wounds. (Tr. 154.) Hospital notes provide that Plaintiff "had been drinking." (Tr. 154.) They also summarize Plaintiff's social history as follows: "Positive for alcohol which he drinks daily. He smokes approximately [one] to [one-and-a-half] packs per day. He uses marijuana and occasionally uses

3

cocaine." (*Id.*) The discharge notes provide, however, that Plaintiff denied any illicit drug use. (Tr. 161.)

In May 2008, Plaintiff sought medication for his knee pain at the Janes Street Academic Community Health Center in Saginaw, Michigan. (Tr. 222.) Plaintiff admitted marijuana and cocaine use and a Janes Street nurse had a 20 minute discussion with Plaintiff about a "drug contract" and drug use. (Tr. 222.) That day, Plaintiff provided a urine sample; the results were positive for cocaine and marijuana. (Tr. 228.)

In July 2008, Plaintiff returned to Janes Street and saw the same nurse. (Tr. 216.) Plaintiff admitted to cocaine and marijuana use and that he had bought Vicodin on the street. (*Id.*) It appears that the Janes Street nurse told Plaintiff that he would not get a prescription for Vicodin until he stopped using drugs. (*Id.*) Plaintiff refused to sign a drug contract and indicated a more immediate need for Vicodin. (*Id.*) Plaintiff's mental status was normal: he was oriented, his recent and remote memory were intact, his mood and affect appropriate, and his insight and judgment were intact. (*Id.*)

### 3. *Vocational Expert's Testimony at the Hearing Before the ALJ*

At Plaintiff's administrative hearing, a vocational expert ("VE") testified about job availability for individuals with functional limitations. The ALJ first asked the VE to consider a person of Plaintiff's age, education, and work history who was able to work at the light exertional level[2] except that the individual could not climb, balance, kneel, crouch, or crawl; could only occasionally stoop; had no more than 50 percent of the normal grip strength in the non-dominant

---

[2]*See* S.S.R. 83-10, 1983 WL 31251, at *5 ("The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.").

hand; and could not perform fine dexterity with the non-dominant hand. (Tr. 48-49.) The VE responded that there were a number of unskilled entry-level occupations that the hypothetical individual could perform. (Tr. 49.)

The ALJ next asked the VE to consider someone with the same physical limitations as the first hypothetical individual except that the person could only perform sedentary work.[3] (Tr. 49.) The VE maintained that this more-restricted individual could work as a receptionist/information clerk, machine monitor, or in an administrative position – each occupation having thousands of positions in the national economy. (Tr. 49-50.)

The ALJ then asked,

> If, with respect to both [the] light and sedentary occupations you just told us about, if I were to add that the work had to be limited to simple, routine, repetitious tasks with one or two step instructions, would that eliminate any of the occupations?

(Tr. 50.) The VE responded that none of the occupations would be eliminated. (*Id.*)

### C. Framework for Disability Determinations

Under the Social Security Act (the "Act") Supplemental Security Income is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

---

[3] *See* S.S.R. 83-10, 1983 WL 31251, at *5 ("The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools . . . . Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday").

5

last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**D. The Administrative Law Judge's Findings**

At step one, ALJ Bunce found that Plaintiff has not engaged in substantial gainful activity since July 8, 2008 — Plaintiff's SSI application date. (Tr. 17.) At step two, he found that Plaintiff had the following severe impairments: "residual effects of fracture of the left clavicle and of gunshot

6

wounds to the left hand and right knee[,] [and] substance-abuse disorder." (*Id.*) Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment. (Tr. 17-19.) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform work that does not require:

> exertion above the light level; or any climbing, balancing, kneeling, crouching, or crawling; or more than 50 percent of normal grip strength in or fine dexterity with the non-dominant hand; or more than simple, routine, repetitious tasks, with one- or two-step instructions.

(Tr. 19-21.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. 21.) At step five, the ALJ relied on VE testimony in response to his hypotheticals, and found that work existed in significant numbers that Plaintiff could perform: security guard (150,000 jobs in the national economy), sales person (124,000 jobs), and stock clerk (213,000). (Tr. 22.)

### E. Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

**F. Analysis**

As noted, Plaintiff has raised a single claim of error on appeal. At step three of the five-step disability determination process, the ALJ determined that Plaintiff's substance-abuse disorder did not meet or medically equal the criteria of Listing 12.09, Substance Addiction Disorders. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. In rating one of the four "B" criteria associated with that Listing – concentration, persistence, or pace ("CPP")[4] – the ALJ found that Plaintiff had "moderate difficulty." (Tr. 18.) Plaintiff says that this "moderate" finding required the ALJ to include limitations beyond "simple, routine, repetitive tasks, with one- or two-step instructions" in his residual functional capacity ("RFC") assessment of Plaintiff, and, similarly, in the hypotheticals he provided to the VE. (Pl.'s Mot. Summ. J. at 7.) Because the ALJ did not include further CPP limitations in the hypotheticals to the VE, Plaintiff maintains that the hypotheticals were flawed. And, because those hypotheticals were flawed, Plaintiff concludes that the VE's testimony about job availability did not constitute substantial evidence supporting the ALJ's ultimate disability determination.

Although there is no shortage of decisions from this District resolving this claim of error, for reasons made apparent below, the Court need not delve into this case law.[5] The Court takes this opportunity, however, to the note the following. In this case, ALJ Bunce explained that his

---

[4]"Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00.

[5] This Court summarized and then attempted to reconcile several of this District's precedents in *Lamb v. Comm'r of Soc. Sec.*, No. 10-cv-14645, 2011 U.S. Dist. LEXIS 153641, at *39-59 (Dec. 1, 2011) (Michelson, M.J.) *adopted by* 2012 U.S. Dist. LEXIS 25222 (E.D. Mich. Feb. 28, 2012) (Duggan, J.).

definition[6] of "moderate" difficulties in CPP was consistent with the hypothetical (and RFC) limitations he provided:

> With regard to concentration, persistence or pace, the claimant has moderate difficulty. The claimant's impairments reasonably may be expected to limit him in this area, but the RFC adopted here specifies simple, routine, repetitious tasks, with one- or two-step instructions. I find that this restriction sufficiently accommodates any possible limitations that the claimant may have regarding concentration, persistence, or pace.

(Tr. 18.) In *Lamb*, this Court suggested that, where an ALJ finds a "moderate" CPP limitation, the objective medical evidence and opinion evidence of a significant CPP problem is minimal, *and* the ALJ explains how his hypothetical (or RFC) limitations account for his own "moderate" finding, remand may not be necessary even where CPP-related limitations take the form of "simple, routine, and unskilled." *See* 2011 U.S. Dist. LEXIS 153641 at *58; *see also Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F. Supp. 2d 804, 807 (E.D. Mich. 2005) ("Significantly, while the ALJ checked the 'often'

---

[6]The regulations do not define a "moderate" CPP limitation. However, they provide the following regarding "marked" difficulties in CPP:
> We do not define "marked" by a specific number of tasks that you are unable to complete, but by the nature and overall degree of interference with function. You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks. Deficiencies that are apparent only in performing complex procedures or tasks would not satisfy the intent of this paragraph B criterion. However, if you can complete many simple tasks, we may nevertheless find that you have a marked limitation in concentration, persistence, or pace if you cannot complete these tasks without extra supervision or assistance, or in accordance with quality and accuracy standards, or at a consistent pace without an unreasonable number and length of rest periods, or without undue interruptions or distractions.

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00. And, regarding the other side of the "moderate" range, a "mild" mental impairment is generally considered "non-severe," i.e., an impairment that has a "minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d).

box on the PRTF, his more specific and detailed assessment of Plaintiff's mental limitations noted a dearth of objective medical findings or treatment records that would support a finding of a major impairment in this area. . . . Under this record, a set of restrictions need not have been especially extensive or detailed in order to adequately reflect Plaintiff's non-exertional limitations, and the ALJ reasonably could have determined that a limitation to 'simple and rote' job tasks would be sufficient to address Plaintiff's moderate and occasional deficiencies in concentration, persistence, or pace."). The three criteria seem to apply here: ALJ Bunce himself, as opposed to any medical professional, found that Plaintiff had "moderate" difficulties in concentration, persistence, or pace; there is no medical evidence in the record indicating that Plaintiff suffered from significant concentration, persistence, or pace deficiencies; *and* ALJ Bunce explained that the "moderate" difficulties he himself found were accounted for by the hypothetical limitations he crafted: "simple, routine, repetitious tasks, with one- or two-step instructions." On these facts, it is difficult to see how the ALJ committed reversible error justifying remand.

Moreover, even if the ALJ erred by failing to include CPP-based limitations beyond "simple, routine, repetitious tasks, with one- or two-step instructions," that error was harmless.

Plaintiff has not pointed to any source for his concentration, persistence, or pace problems apart from substance abuse. The Commissioner asserts that there is none. (Def.'s Mot. Summ. J. at 5.) This assertion is consistent with the Court's review of the record. As the above summary of the record indicates, no medical professional ever found Plaintiff to have any mental-status problems – let alone concentration or task-completion problems. Plaintiff never sought mental-health treatment. And Plaintiff himself indicated that he did not have difficulties completing tasks or concentrating. Further, it was solely because of Plaintiff's substance abuse that the ALJ even

11

considered Listing 12.09, and, in turn, made the finding that Plaintiff had "moderate" difficulties in CPP. (*See* Tr. 17-18 ("I have measured severity with respect to listed impairment 12.09 by the criteria of part B of listed impairment 12.04.").)

The fact that the administrative record, and the ALJ's narrative, evidence that the sole cause of Plaintiff's "moderate" CPP difficulties is substance abuse is dispositive of Plaintiff's request to remand. The Social Security Regulations provide that an award of SSI is not appropriate where substance abuse is a "contributing factor material to the determination of disability":

> If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, *we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability*, unless we find that you are eligible for benefits because of your age or blindness. . . .
>
> The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol. . . .
>
> In making this determination, we will evaluate *which of your current physical and mental limitations*, upon which we based our current disability determination, *would remain if you stopped using drugs or alcohol* and then determine whether any or all of your remaining limitations would be disabling.
>
> If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

20 C.F.R. § 416.935 (emphases added); *see also Hennenfent v. Astrue*, 10-CV-1422, 2011 WL 5238922, at *11 (C.D. Ill. Nov. 1, 2011) ("Plaintiff's first argument is that the ALJ made an error of law in finding that Plaintiff met Listings 12.04, 12.06, and 12.09, but also denying her benefits. . . . Ordinarily, it is true that if the ALJ finds that a claimant's impairments meet or equal the requirements of a Listing, the claimant will be found to be disabled and entitled to benefits.

However, in cases in which there is medical evidence of alcohol or drug abuse, the ALJ must determine if drug addiction or alcoholism is a contributing factor material to the determination of disability, or, in other words, what the claimant would be able to do if she were to stop abusing alcohol or drugs." (citing 20 C.F.R. § 404.1535(b)(2))); *Legere v. Comm'r Soc. Sec.*, 1:09-CV-413-JAW, 2010 WL 2670830, at *3 (June 28, 2010) *adopted by* 2010 WL 2899472 (D. Me. July 20, 2010) (finding no reversible error where ALJ concluded that Plaintiff met a listing at step three but then concluded, pursuant to 20 C.F.R. §§ 404.1535, 416.935, that Plaintiff was not disabled within the meaning of the Act).

Thus, even if this case were remanded for the ALJ to include additional CPP limitations (and assuming that the VE would testify that, with the additional limitations, work was precluded) the ALJ could not award Plaintiff SSI based on those limitations because they would be rooted in Plaintiff's substance abuse. *See* 20 C.F.R. § 416.935; *Hennenfent*, 2011 WL 5238922, at *11. Accordingly, this Court concludes that if the ALJ erred by failing to include additional CPP-based limitations in his RFC assessment or in the hypotheticals to the VE, the error was harmless.

### G. Conclusion

For the foregoing reasons, this Court finds that the ALJ did not commit reversible error by excluding further concentration, persistence, or pace limitations from the hypotheticals he provided to the vocational expert or from his residual functional capacity assessment of Plaintiff. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

## III. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated: April 17, 2012

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 17, 2012.

s/Jane Johnson
Deputy Clerk